UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLORIA SANCHEZ, | § | No. SA:14–CV–515–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| WELLS FARGO BANK, N.A., and | § | |
| BRUCE NEYLAND, | § | |
| | § | |
| Defendants. | § | |

ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND AND
(2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Before the Court is a Motion to Remand (Dkt. # 4) and a Motion for
Leave to File First Amended Complaint (Dkt. # 5) filed by Plaintiff Gloria Sanchez
("Plaintiff").  On November 13, 2014, the Court heard oral argument on both
Motions.  Christopher J. Deeves, Esq., appeared at the hearing on behalf of
Plaintiff; Justin E. Allen, Esq., appeared at the hearing on behalf of Defendant
Wells Fargo Bank, N.A. ("Wells Fargo").  After reviewing the motions, and
considering the parties' arguments at the hearing, the Court **DENIES** Plaintiff's
Motion to Remand (Dkt. #4) and **GRANTS IN PART AND DENIES IN PART**
Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. #5).

<u>BACKGROUND</u>

I.      <u>Factual Background</u>

On October 29, 2002, Plaintiff obtained a mortgage to purchase the property located at 630 Blue Bonnet North, Floresville, Wilson County, Texas ("the Property").  In connection with the purchase, Plaintiff executed a promissory note and a deed of trust.  Wells Fargo is the holder of both the promissory note and the deed of trust.  (Dkt. # 1, Ex. B-2 ¶ 4.)  By July or August 2013, Plaintiff had fallen behind on her payments and contacted Wells Fargo about bringing the loan current.  (<u>Id.</u> ¶ 5.)  Wells Fargo's representative allegedly told Plaintiff that she "did not need to worry about bringing the loan current," and she should instead apply for a loan modification.  (<u>Id.</u> ¶ 5.)

Plaintiff did so, but on September 13, 2013, she received a letter from Wells Fargo informing her that her application had been denied because she had failed to submit all the required materials.  The letter stated that while Wells Fargo would continue to work with Plaintiff to help her avoid foreclosure, the foreclosure process would continue.  (<u>Id.</u> ¶ 6.)

On September 16, 2013, Wells Fargo sent Plaintiff another letter allegedly returning prior partial payments "in order to avoid having to restart the foreclosure process."  (<u>Id.</u> ¶ 11.)  The letter also allegedly stated that Plaintiff was not in a loan modification process and that foreclosure would continue.  (<u>Id.</u>)  On

September 17, 2013, Wells Fargo allegedly informed Plaintiff that it could not help her obtain a loan modification.  (Id.)

On September 20, 2013, Wells Fargo acknowledged that it had received further documentation from Plaintiff and stated that she was being considered for a loan modification program, but nonetheless informed her that it would proceed with a foreclosure sale.  (Id.)  On September 24, 2013, Wells Fargo allegedly informed Plaintiff that she had not submitted the proper documentation, and although she was still in the loan modification process the foreclosure would proceed "because there was not time to review her for a loan modification prior to the foreclosure date."  (Id.)

On August 26, 2013, Wells Fargo appointed Defendant Bruce Neyland ("Neyland") as substitute trustee to proceed with the foreclosure sale.  (Id. ¶ 7.)  On October 1, 2013, the Property was sold at a foreclosure sale.  (Id.)

II.    Procedural Background

On October 29, 2013, Plaintiff filed her first lawsuit concerning the foreclosure of the Property in the 81st Judicial District Court of Wilson County, Texas, naming Wells Fargo as the sole defendant.  (Dkt. # 7, Ex. A.)  Wells Fargo removed the case to the Western District of Texas, invoking the federal court's diversity jurisdiction.  (Id. Ex. B.)  On December 23, 2013, Plaintiff filed a Motion for Leave to Amend Pleadings, seeking to join Neyland as a defendant.  (Id.)  On

February 24, 2014, Judge Xavier Rodriguez denied Plaintiff's motion.  (Id. Ex. C.)
On March 31, 2014, Plaintiff voluntarily dismissed her suit without prejudice.  (Id.
Ex. D.)

        On April 8, 2014, Plaintiff filed the instant lawsuit in the 218th
Judicial District Court of Wilson County, Texas, this time naming both Neyland
and Wells Fargo as the defendants.  (Dkt. # 1, Ex. B-2.)  On June 6, 2014,
Defendants removed the case to this Court, invoking this Court's diversity
jurisdiction.  (Dkt. # 1, Ex. B-7.)  On July 7, 2014, Plaintiff filed a Motion for
Leave to File First Amended Complaint (Dkt. # 4) and a Motion to Remand (Dkt.
# 5).  On July 21, 2014, Defendants filed responses to both motions.  (Dkts. ## 7,
8.)  On July 25, 2014, Plaintiff filed replies to both responses.  (Dkts. ## 12, 13.)

## LEGAL STANDARD

### I.    Motion to Remand

        A defendant may remove to federal court any civil action brought in
state court over which the district court would have had original jurisdiction.
28 U.S.C. § 1441(a); Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir.
2013).  Original jurisdiction may be based on either diversity of citizenship or the
existence of a federal question.  Halmekangas v. State Farm Fire and Cas. Co., 603
F.3d 290, 295 (5th Cir. 2010).  On a motion to remand, the removing party bears
the burden of establishing that one of these bases of jurisdiction exists.  Shearer v.

Sw. Serv. Life Ins. Co., 516 F.3d 276, 278 (5th Cir. 2008).  Diversity jurisdiction

exists where the amount in controversy exceeds $75,000 and there is complete

diversity of citizenship between the parties—in other words, every plaintiff must

be diverse from every defendant.  28 U.S.C. § 1332(a); Harvey v. Grey Wolf

Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008); Caterpillar Inc. v. Lewis, 519

U.S. 61, 68 (1996).

> To determine whether jurisdiction is present for removal, the court

considers the claims in the state court petition as they existed at the time of

removal.  Louisiana v. Am. Nat. Prop. Cas. Co., 746 F.3d 633, 637 (5th Cir. 2014)

(citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir.

1995)).  Because removal jurisdiction implicates federalism concerns, all

ambiguities must be construed in favor of remand.  Barker v. Hercules Offshore,

Inc., 713 F.3d 208, 212 (5th Cir. 2013) (citing Manguno v. Prudential Prop. & Cas.

Co., 276 F.3d 720, 723 (5th Cir. 2002)).

II.     Motion for Leave to File First Amended Complaint

> Courts should "freely give leave [to amend] when justice so requires."

Fed. R. Civ. P. 15(a)(2).  Following the Supreme Court's guidance, the Fifth

Circuit uses five factors in determining whether to grant a party leave to amend a

complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to

cure deficiencies by previous amendments, 4) undue prejudice to the opposing

party, and 5) futility of the amendment.  <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d

854, 864 (5th Cir. 2003) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

  An amendment is futile if it could not survive a motion to dismiss.

<u>Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.</u>, 620 F.3d 465, 468

(5th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544, 570 (2007)).

<u>DISCUSSION</u>

I. <u>Motion to Remand</u>

  Plaintiff, a citizen of Texas, contends that the Court is required to

remand this case because she has stated a valid claim against Neyland, who is also

a citizen of Texas, thereby destroying the diversity giving rise to federal

jurisdiction.  (Dkt. # 5 ¶ 11.)  <u>See</u> 28 U.S.C. § 1332(a).  Defendants counter that

Neyland must be dismissed from this case under Texas Property Code § 51.007

because he was sued in his official capacity as substitute trustee.  (Dkt. # 7 ¶ 9.)  In

the alternative, Defendants argue that Neyland was fraudulently joined and thus his

citizenship should not be considered for diversity purposes.  (Dkt. # 7 ¶ 4.)

A.   Texas Property Code § 51.007

Defendants claim that because Neyland was sued in his official capacity, he should be dismissed from this case under Texas Property Code § 51.007. (Dkt. # 7 ¶ 9.) § 51.007 provides that a trustee named in a suit or proceeding may include in the answer a verified denial stating that the trustee is not a necessary party. Tex. Prop. Code § 51.007(a). The trustee must include a statement of the basis for the trustee's belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust. Id. The plaintiff then has thirty days to file a verified response rebutting the trustee's verified denial. Id., § 51.007(b). If the plaintiff fails to do so, the trustee "shall be dismissed from the suit or proceeding without prejudice."[1] Id., § 51.007(c). See also WAMCO XXVII, Ltd. v. Casa Grande Cotton Fin. Co., 314 F. Supp. 2d 655, 657 (N.D. Tex. 2004) (dismissing defendant without prejudice based on plaintiff's failure to file a

---

[1] Texas Property Code § 51.007(a)–(c) reads in full:
   (a) The trustee named in a suit or proceeding may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument.
   (b) Within 30 days after the filing of the trustee's verified denial, a verified response is due from all parties to the suit or proceeding setting forth all matters, whether in law or fact, that rebut the trustee's verified denial.
   (c) If a party has no objection or fails to file a timely verified response to the trustee's verified denial, the trustee shall be dismissed from the suit or proceeding without prejudice.

verified response to verified denial); <u>Vela v. U.S. Bank Nat. Ass'n</u>, No. 5:13–CV–868–DAE, 2014 WL 1219049, at *4 (W.D. Tex. Mar. 24, 2014) (same).

       In this case, Neyland included a verified denial in his answer, filed on May 19, 2014.  (Dkt. # 1, Ex. B-4.)  Plaintiff failed to file a verified response within the thirty day period.  Although Neyland has not filed a motion to dismiss, the Court has the discretion to dismiss parties sua sponte.  <u>See</u> <u>McCullough v. Lynaugh</u>, 835 F.2d 1126, 1127 (5th Cir. 1988); <u>Adams v. Chase Bank</u>, No. 3:11–CV–3085–M, 2012 WL 2122175 (N.D. Tex. May 11, 2012) <u>adopted by</u> <u>Adams v. Chase Bank</u>, No. 3:11–CV–3085–M, 2012 WL 21309075, at *1 (N.D. Tex. June 12, 2012) (sua sponte dismissing defendant as improperly joined).  Therefore, dismissal of Neyland is proper under § 51.007.[2]

    B.   <u>Fraudulent Joinder</u>

       Although § 51.007 dictates the resolution of this Motion, the Court addresses the fraudulent joinder arguments made by both parties for the sake of thoroughness.  District courts are prohibited from exercising jurisdiction over a suit in which any party has been improperly joined to manufacture federal diversity

---

[2] On November 6, 2014, Plaintiff filed a "Notice of Supplemental Authority." (Dkt. # 18.)  In this document, Plaintiff admits that she should have submitted a response to Neyland's verified denial by June 18, 2014.  (<u>Id.</u> at 4.)  Nevertheless, Plaintiff argues that because she included specific causes of action against Neyland in her Proposed First Amended Complaint of July 7, 2014, Neyland was required to file a second verified denial.  (<u>Id.</u> at 5.)  The Court disagrees.  Neyland cannot be required to file a denial to a proposed pleading.  Because Plaintiff missed the deadline to respond to Neyland's verified denial, Neyland will be dismissed.

jurisdiction.  Smallwood v. Ill. Cent. R. Co., 385 F.3d 568, 572 (5th Cir. 2004).  If the court finds that a defendant has been fraudulently joined, the court may disregard that defendant's citizenship for purposes of determining diversity jurisdiction.  Borden v. Allstate Ins. Co., 589 F.3d 168, 171 (5th Cir. 2009).  A showing of fraudulent joinder can arise in one of two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Smallwood, 385 F.3d at 573 (quoting Travis v. Irby, 326 F.3d 644, 646–47 (5th Cir. 2003)).  As there are no allegations of actual fraud in this case, only the second method of establishing fraudulent joinder is at issue.

To succeed under the second method, the defendant must demonstrate that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id.  To make such a determination, courts apply a Rule 12(b)(6) analysis, looking to the allegations in the complaint to determine whether there is a reasonable basis to predict whether the plaintiff might be able to recover against the in-state defendant under state law.  Id.  Unlike in a traditional Rule 12(b)(6) analysis, however, courts "retain discretion to pierce the pleadings and review evidence on whether plaintiff has a viable cause of action against the non-diverse

defendant under state law." <u>Minella v. Bank of Am., N.A.</u>, No. SA-14-CV-174-XR, 2014 WL 1330554, at *2 (W.D. Tex. Apr. 1, 2014); <u>Smallwood</u>, 385 F.3d at 573 ("the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.").

   Plaintiff concedes that her original complaint contains no specific cause of action against Neyland, but contends that her complaint contains sufficient facts to establish a cause of action against Neyland.  (Dkt. # 4 ¶ 1; Dkt. # 13 ¶ 5.)  Plaintiff's argument appears to be based in large part on a sworn statement made by Neyland in the substitute trustee's deed, which affirms that "all matters, duties and obligations of Mortgagee were lawfully performed."  (Dkt. # 5 ¶ 4).  Plaintiff asserts that this statement indicates that Neyland conducted an independent investigation into the default and foreclosure process and confirmed that Wells Fargo acted lawfully throughout.  (<u>Id.</u>)  Plaintiff further claims that in reality, Defendants acted unlawfully when they (1) failed to provide her with proper notices and (2) listed the Property in violation of the HAMP guidelines and the Texas Debt Collection Practices Act.  (<u>Id.</u>)  Plaintiff argues that by listing the Property in spite of these defects, Neyland violated the duty of fairness he owed to her as substitute trustee.  (Dkt. #5 ¶ 4; Dkt. # 13 ¶ 4.)  For the reasons stated below, the Court finds that Plaintiff cannot establish a valid cause of action against Neyland under Texas law.

1.    Foreclosure Notice

Plaintiff claims that Neyland is liable to her based on an alleged

failure to provide her with proper notices.  (Id.)  Plaintiff's complaint does include

allegations that Defendants failed to comply with the notice provisions included in

the deed of trust, which states that the trustee will "either personally or by agent

give notice of the foreclosure sale as required by the Texas Property Code as then

in effect." [3]  (Dkt. # 1, Ex. B-2 ¶ 7; Dkt. # 5, Ex. 2 at 3.)

Under Texas law, notice of sale must be given at least 21 days before

the date of the sale by serving written notice by certified mail on the debtor

obligated to pay the debt.  See Tex. Prop. Code § 51.002(b).  The notice need not

be received; rather, service is complete when the notice is deposited in the United

States mail, postage prepaid and addressed to the debtor.  Id., § 51.002(e).  The

affidavit of a person knowledgeable of the facts to the effect that service was

completed is prima facie evidence of service.  Id.  See also Vaillancourt v. PNC

Bank, N.A., — F.3d —, 2014 WL 5801401, at *6–7 (5th Cir. Nov. 4, 2014)

(finding sufficient evidence of service under § 51.002(e) where the defendant bank

produced a certified mail receipt and an affidavit averring that "[a]ll notices . . .

were served . . . by certified mail at the last known address of such debtor in

---

[3] There is some dispute as to which Deed of Trust is actually at issue in the
litigation.  (See Dkt. # 7 ¶ 4 n.2.)  The Court here relies on the document put forth
by Plaintiff.

accordance with the law."); <u>Rodriguez v. U.S. Bank, N.A.</u>, No. SA–12–CV–345– XR, 2013 WL 5173125, at *2 (W.D. Tex. Sept. 12, 2013) (finding prima facie evidence of service of a notice of default where defendants produced an affidavit, the notice, and the certified mail tracking numbers).

   As stated previously, the Court has discretion to review summary judgment-type evidence about whether the plaintiff has a viable cause of action against the non-diverse defendant. <u>Minella</u>, 2014 WL 133054, at *2. Wells Fargo has submitted a copy of a letter dated August 22, 2013, notifying Plaintiff that her debt had been accelerated and that the substitute trustee would proceed with foreclosure. (Dkt. # 7, Ex. E.) Wells Fargo also submitted an affidavit confirming mailing of the notice and a copy of the letter's tracking information. (<u>Id.</u>) The Court finds that Defendants complied with the requirements of the Texas Property Code as specified in the deed of trust. Therefore, Plaintiff has no cause of action against Neyland based on a failure to provide her with appropriate notices under Texas law.[4]

---

[4] In Plaintiff's "Notice of Supplemental Authority," (Dkt. # 18), Plaintiff calls the Court's attention to <u>Zarzurela v. Wells Fargo</u>, No. 5:14-CV-499-OLG, slip op. (W.D. Tex. Aug. 25, 2014). In that case, the district court found no fraudulent joinder and granted the plaintiffs' motion to remand where the plaintiffs alleged the trustee had not mailed the requisite notices, and the bank produced copies of letters addressed to one plaintiff which stated the bank's intention to accelerate the mortgage note if the plaintiffs did not cure their default. <u>Id.</u> at 9. However, that case is clearly distinguishable from the instant case, in which Defendants have produced copies of the notice of acceleration and sale, along with an affidavit and

        2.    <u>Duty of Fairness</u>

        Lastly, Plaintiff argues that posting the Property for sale violated the

HAMP guidelines and the Texas Debt Collection Practices Act ("TDCPA").  (Dkt.

# 5 ¶ 4.)  According to Plaintiff, Neyland violated his duty of fairness as a trustee

by listing the Property in spite of these violations and by affirming Wells Fargo

acted lawfully despite these deficiencies.  (Dkt. # 5 ¶ 4; Dkt. # 13 ¶ 4.)  Defendants

respond that Neyland cannot be held liable for improper foreclosure proceedings in

this case because Texas Property Code § 51.007(f) protects trustees who rely in

good faith on information provided to them by the mortgagee.  (Dkt. # 7 ¶ 10.)

        Under Texas law, a substitute trustee has the duty to "act with

absolute impartiality and fairness to the grantor in performing the powers vested in

him by the deed of trust." <u>Marsh v. Wells Fargo Bank, N.A.</u>, 760 F. Supp. 2d 701,

708 (N.D. Tex. 2011); <u>Hammonds v. Holmes</u>, 59 S.W.2d 324, 347 (Tex. 1977).

"This duty is breached when the trustee fails to comply strictly with the terms of

the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property

Code." <u>Id</u>.  However, a trustee has no affirmative duty to investigate into the

validity of foreclosure proceedings "beyond that required by the statute or the deed

copy of the letter's tracking information.  (Dkt. # 7, Ex. E.)  The <u>Zarzurela</u> court
relied heavily on the facts that the bank had not produced an affidavit or other
"summary judgment-type evidence disproving Plaintiffs' allegations," and that the
letter was addressed to only one of the two plaintiffs.  <u>Zarzurela</u>, slip op. at 9.
Here, Defendants have produced the appropriate evidence and shown that the letter
was properly addressed to the only plaintiff in this case.

of trust to ensure a fair sale." <u>Minella</u>, 2014 WL 1330554, at *3 (citing <u>First State Bank v. Keilman</u>, 851 S.W.2d 914, 924 (Tex. App.—Austin 1993, writ denied)). Even though a trustee can be held liable for improper foreclosure proceedings, Texas law protects trustees "for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." <u>See</u> Tex. Prop. Code § 51.007(f).

In this case, Plaintiff argues that because she was attempting to obtain a loan modification, posting the Property violated the HAMP guidelines and the TDCPA. (Dkt. # 5 ¶ 4.) According to Plaintiff, these "irregularities" "call into question" the trustee's duty of fairness. (<u>Id.</u>) Furthermore, Plaintiff maintains that Texas Property Code § 51.007(f) does not protect Neyland because he personally alleged that the foreclosure had been conducted lawfully, meaning that he must have "conducted an independent investigation" into the foreclosure process. (<u>Id.</u>) According to Plaintiff, "[t]his is not his reliance on the facts provided to him by the bank but an affirmative statement by him that these things were true." (<u>Id.</u>)

Even if Plaintiff is correct, the Court finds that he was entitled to rely on information provided to him by Wells Fargo in the course of any independent investigation before signing the deed of trust affirming that the bank had acted lawfully during the foreclosure process. <u>See</u> Tex. Prop. Code § 51.007(f); <u>R & L</u>

<u>Inv. Prop., LLC v. Green</u>, No. 3:12–CV–4171–O, 2014 WL 1807618, at *8–9
(N.D. Tex. May 6, 2014) (finding trustee not liable pursuant to § 51.007(f) where
trustee performed deficient calculations based on information provided by the
mortgagee, and noting that "[t]he evidence does not establish that Trustee's
liability is based on his own acts or omissions, separate and apart from any reliance
on information provided by [the mortgagee]" (internal quotation marks omitted)).
Therefore, Neyland cannot be liable to Plaintiff for actions he undertook or
affirmations he made in good faith reliance on information provided to him by
Wells Fargo.

As stated above, the fraudulent joinder arguments ultimately do not
determine the outcome in this case because Texas Property Code § 51.007 requires
Neyland to be dismissed from this action.  For that reason, the Court **DENIES**
Plaintiff's Motion to Remand.

II.     <u>Motion for Leave to File First Amended Complaint</u>

Plaintiff requests leave from the Court to make the following
amendments to her complaint: (1) clarifications to her Deceptive Trade Practices
Act ("DTPA") claims; (2) additional TDCPA claims; and (3) clarifications to her
breach of contract claims.  (Dkt. # 4 ¶ 1; Dkt. # 12 ¶¶ 9–12.)  The Court notes that
some of Plaintiff's proposed amendments include additional allegations and causes
of action against Neyland.  Because the Court has determined that Neyland must

be dismissed from this action, to the extent Plaintiff seeks to add or clarify claims against Neyland, Plaintiff's motion is denied as moot.

      A.    <u>Deceptive Trade Practices Act</u>

      First, Plaintiff seeks to amend her complaint in order to "clarify her DTPA pleadings."  (Dkt. # 4 ¶ 1.)  Defendants argue that such an amendment would be futile because Plaintiff does not qualify as a "consumer" under the DTPA and therefore cannot bring a claim under that Act.  (Dkt. # 8 ¶ 16).

      To state a valid DTPA claim, a plaintiff must establish that she is a "consumer" under the DTPA.  Tex. Bus. & Com. Code § 17.50(a); <u>Doe v. Boys Club of Greater Dall., Inc.</u>, 907 S.W.2d 472, 478 (Tex. 1995).  To qualify as a consumer under the DTPA, a plaintiff must have sought or acquired goods or services by purchase, and those goods or services purchased or leased must form the basis of the complaint.  Tex. Bus. & Com. Code § 17.45(4); <u>Cameron v. Terrell & Garrett, Inc.</u>, 618 S.W.2d 535, 539 (Tex. 1981).  Texas law clearly states that borrowing money does not constitute the acquisition of a good or service. <u>Riverside Nat. Bank v. Lewis</u>, 603 S.W.2d 169, 175–76 (Tex. 1980) (a person who obtains a loan is not a consumer because the lending of money involves neither a good nor a service); <u>Montalvo v. Bank of Am. Corp.</u>, 864 F. Supp. 2d 567, 580 (W.D. Tex. 2012) (under Texas law, a plaintiff who seeks a mortgage modification

16

and receives free services from the mortgage holder or servicer in connection with the modification is not a consumer under the DTPA).

In this case, because Plaintiff's claims arise out of a loan, she does not qualify as a "consumer" under the DTPA.  Plaintiff, however, claims that the basis of her DTPA claim is not the loan itself but the loan modification process. Plaintiff characterizes the loan modification process as a service rather than a loan, and thus argues that she constitutes a consumer under the DTPA.  (Dkt. # 12 ¶ 6.) Courts have rejected identical arguments in the past, and this Court finds the reasoning in those cases persuasive.  See Kennedy v. Wells Fargo, No. 11–CV– 957–FB, slip op. at 12 (W.D. Tex. Oct. 23, 2012) ("To the extent plaintiff bases her DTPA claim, not on the lending of money, but on the review and subsequent denial of her loan modification application, the Court finds plaintiff does not constitute a consumer under that theory either."); Owens v. BAC Home Loans Serv., L.P., No. H–11–2742, 2012 WL 1494231, at *4 (S.D. Tex. Apr. 27, 2012) ("Because the plaintiffs sought to modify their mortgage loan and not to acquire, by purchase or lease, a 'good' or 'service,' they have not stated a viable DTPA claim.").  Because Plaintiff does not qualify as a "consumer" under the DTPA, the Court finds that allowing Plaintiff to amend her DTPA claim would be futile.

B.    <u>Texas Debt Collection Practices Act</u>

Next, Plaintiff requests leave to amend her complaint to include TDCPA claims against Wells Fargo.  (Dkt. # 4 ¶ 1.)  Plaintiff claims that Defendants' conduct violates §§ 392.301(a)(3), 392.304(a)(8), 392.304(a)(12), 392.304(a)(13), and 392.304(a)(19) of the TDCPA.  (<u>Id.</u>)  Defendants respond that Plaintiff's proposed TDCPA allegations fail to state a plausible claim upon which relief may be granted because Plaintiff's allegations are wholly predicated on Wells Fargo's exercise of its contractual right of foreclosure.  (Dkt. # 8 ¶ 20.)

§ 392.301(a)(3) of the TDCPA prohibits debt collectors using "threats, coercion, or attempts to coerce" in the course of "representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute."  Tex. Fin. Code § 392.301(a)(3).  Plaintiff's proposed amended complaint is devoid of allegations that Wells Fargo notified any third party that Plaintiff wilfully refused to pay a nondisputed consumer debt.  As such, the Court finds that Plaintiff is unable to state a claim under this section and granting her leave to amend her complaint to include such a claim would be futile.

§ 392.304(a)(8) prohibits debt collectors from using "fraudulent, deceptive, or misleading representation" to misrepresent "the character, extent, or

18

amount of a consumer debt, or [misrepresent] the consumer debt's status in a judicial proceeding." Tex. Fin. Code § 392.304(a)(8). § 392.304(a)(19) prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). "For a statement to constitute a misrepresentation under the TDCA, the debt collector must have made an affirmative statement that was false or misleading." Forbes v. CitiMortgage, Inc., 998 F. Supp. 2d 541, 551 (S.D. Tex. 2014).

Generally speaking, courts have allowed claims to proceed under these sections where the plaintiffs alleged their mortgagees promised not to foreclose during the loan modification process, but proceeded with foreclosure nonetheless. See, e.g., Stapp v. Bank of Am., N.A., No. 4:11CV203, 2012 WL 3853440, at *7 (E.D. Tex. Sept. 5, 2012) (plaintiffs pled sufficient facts to survive dismissal of § 392.304(a)(8) claim where they alleged the mortgagee "informed Plaintiffs that the loan was being modified and foreclosure was being postponed while Defendants ultimately proceeded with foreclosure on the Property"); Swim v. Bank of Am., N.A., No. 3:11-CV-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012) (plaintiff stated a valid § 392.304(a)(19) claim where plaintiff alleged defendant foreclosed on the property during the loan modification process despite informing plaintiff that it would not).

Plaintiff makes no such assertion in this case.  On the contrary, Plaintiff admits that Wells Fargo notified her that the foreclosure process would continue while she applied for a loan modification.  (Dkt. # 4, Ex. 1 ¶ 7.)  Plaintiff does allege that "Defendant represented to the Plaintiff in the consent order that the foreclosure process would not continue until a decision on her modification was made," (Id. ¶ 11), but this is not an "affirmative statement" made by Defendant.  Rather, according to Plaintiff's complaint, the consent order was the result of a settlement between Wells Fargo, the federal government, and the Comptroller of Currency.  (Id. ¶ 10.)

However, the Court finds that Plaintiff's timeline of events as relayed in her complaint does allege that Wells Fargo misrepresented the status or character of her debt in various pieces of correspondence.  On September 13, 2014, in a letter discussing the required documentation for a loan modification, Plaintiff alleges that Wells Fargo told her it would "work with Plaintiff to help avoid foreclosure," indicating that she was in the loan modification process.  (Dkt. # 1, Ex. B-2 ¶ 6.)  On September 16, 2014, Plaintiff alleges Wells Fargo informed her that she was *not* in a loan modification process.  (Id. ¶ 11.)  Four days later, on September 20, 2014, Plaintiff alleges Wells Fargo informed her that she *was* in the loan modification process.  (Id.)  The Court finds these allegations sufficient at this

stage of the proceedings to state a claim under § 329.304(a)(8), and Plaintiff must be allowed to amend her complaint to add a claim under this section.

§ 392.304(a)(12) prohibits debt collectors from using "fraudulent, deceptive, or misleading representation" to represent "that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12). Similarly, § 392.304(a)(13) prohibits debt collectors from using "fraudulent, deceptive, or misleading representation" to represent "that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion." Tex. Fin. Code § 392.304(a)(13). Nowhere in Plaintiff's proposed amended complaint does she allege that Defendants even mentioned attorney's fees, investigation fees, service fees, or other charges to her. Therefore, Plaintiff cannot state a claim under either of these sections and granting her leave to amend her complaint to include these claims would be futile.

C.   Breach of Contract

Finally, Plaintiff requests leave to amend her complaint to expand upon her breach of contract claim against Wells Fargo on the grounds that Wells Fargo failed to give her "the opportunity to pursue the range of default-curing

21

options" before foreclosing on the Property.  (Dkt. # 12 ¶¶ 9–12.)   Defendants argue that her breach of contract claim would fail because (1) Wells Fargo was not legally obligated to provide Plaintiff with multiple opportunities to cure her default, (2) Plaintiff was in default before applying for a loan modification and before the foreclosure sale, and (3) Plaintiff has no private cause of action based on alleged HAMP and HAFA guideline violations.  (Dkt. # 8 ¶¶ 21–23.)

The essential elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (citing Valero Mktg. & Supply Co. v. Kalama Int'l, LLC, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

"It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach."  Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990) (citation and internal quotation marks omitted).  See also Richardson v. Wells Fargo Bank, N.A., 873 F. Supp. 2d 800, 809 (N.D. Tex. 2012) (granting summary judgment on breach of contract claim to defendant mortgagee where plaintiff was behind on her mortgage payments, although plaintiff was participating in the HAMP plan); Owens v. Bank of America, NA, No. H–11–

22

2552, 2012 WL 912721, at *4 (S.D. Tex. Mar. 16, 2012) ("plaintiffs have undisputedly not performed their contractual obligations because they have not stayed current on their mortgage payments").

In this case, Plaintiff bases her claims on the deed of trust, which she appears to allege incorporates the terms of the consent order.  (Dkt. # 4, Ex. 1 ¶¶ 11, 30.)  She claims that Wells Fargo breached the terms of the deed of trust by failing to provide her with multiple opportunities to cure her default.  (Id. ¶ 30.) However, Plaintiff also clearly acknowledges that she was behind on her payments and in default before the alleged breach by Wells Fargo occurred.  (Id. ¶ 6.) Plaintiff therefore cannot maintain a cause of action for breach of contract against Wells Fargo.  As such, giving Plaintiff leave to amend her complaint to reflect this claim would be futile.  For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Leave to File First Amended Complaint.

<u>CONCLUSION</u>

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion to Remand (Dkt. # 4) and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. # 5).  Plaintiff shall have fifteen days from the date of this order to file her amended complaint consistent with this order.  The Court **DISMISSES** Defendant Bruce Neyland from this action.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, November 13, 2014.

David Alan Ezra
Senior United States Distict Judge